**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

BOB GENE PANNELL, JR.,

        Plaintiff,

vs.                                                    Case No. 3:11-cv-253-J-JRK

MICHAEL ASTRUE,
Commissioner of Social Security,

        Defendant.
_____/

**OPINION AND ORDER**[1]

**I. Status**

Bob Gene Pannell, Jr. ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is a result of porphyria,[2] spinal stenosis, back pain, carpal tunnel syndrome, and anxiety. See Transcript of Administrative Proceedings (Doc. No. 14; "Tr."), filed June 15, 2011, at 51, 167-74, 187. On January 30, 2008, Plaintiff filed applications for DIB and SSI, alleging an onset

---

       [1]      The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a United States Magistrate Judge (Doc. No. 15), filed June 15, 2011; Order of Reference (Doc. No. 17), entered June 16, 2011.

       [2]      Porphyria is a rare genetic disease passed down through families, in which an important part of hemoglobin called heme, is not made properly. Symptoms include severe abdominal pain followed by vomiting and constipation. Being in the sun can cause pain, sensations of heat, blistering, and skin redness and swelling. Blisters heal slowly, often with scarring or skin color changes. They may be disfiguring. Urine may turn red or brown after an attack. National Institute of Health, Porphyria, at http://www.nlm.nih.gov/medlineplus/ency/article/001208.htm (last visited Aug. 30, 2012).

date of November 15, 1997. Tr. at 135. Plaintiff's applications were denied initially, see Tr. at 81-85, 86-88, and were denied upon reconsideration, see Tr. at 93-94, 95-96.

On November 18, 2009, an Administrative Law Judge ("ALJ") held a hearing at which Plaintiff and a vocational expert ("VE") testified. Tr. at 32-74. The ALJ issued a Decision on November 25, 2009, finding Plaintiff not disabled through the date of the Decision. Tr. at 16-27. On February 9, 2011, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On March 16, 2011, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises two issues on appeal. See Memorandum in Support of Plaintiff's Complaint (Doc. No. 19; "Pl.'s Mem."), filed June 30, 2011. Plaintiff frames issue one as follows: "The [ALJ] erred by not properly formulating a complete hypothetical for the [VE] or mischaracterizing [P]laintiff's residual functional capacity [("RFC")]." Pl.'s Mem. at 4 (capitalization and emphasis omitted). Specifically, Plaintiff argues that the ALJ improperly failed to consider the limitations associated with porphyria in the RFC assessment and hypothetical to the VE. Id. at 4-6. Central to this issue is whether the ALJ correctly found Plaintiff's porphyria to be controlled with medication. Plaintiff frames issue two as follows: "The [ALJ] erred by denying the claim based on the one position of surveillance system monitor." Id. at 6. In essence, Plaintiff argues that the surveillance system monitor position identified by the VE in response to the hypothetical does not satisfy Defendant's burden to come forward with work Plaintiff can perform because the job does not exist in "significant numbers" as required by the controlling law. Id. at 7.

After a thorough review of the record, the undersigned finds that this case is to be reversed and remanded based on the Court's inability to properly review the ALJ's finding that Plaintiff's porphyria is controlled by medication. Because the matter is due to be reversed and remanded for reconsideration of the effects of Plaintiff's porphyria, and because the ALJ's further consideration of those effects on remand may have an impact on the factual finding at which Plaintiff's remaining argument is aimed, the remaining argument is not addressed herein. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be reconsidered on remand); Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that certain arguments need not be addressed when the case would be remanded on other issues).

## II. The ALJ's Decision

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th

---

[3] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 18-27. At step one, the ALJ observed that "[Plaintiff] has no reported earnings since 1997; however, he has told medical providers that he refinishes homes and does landscaping." Tr. at 18 (emphasis and citation omitted). The ALJ continued "with the sequential evaluation process as if [Plaintiff] has not engaged in substantial gainful activity." Tr. at 18 (emphasis and citation omitted). At step two, the ALJ found Plaintiff suffers from "the following severe impairments: left shoulder degenerative joint disease, carpal tunnel syndrome, moderate lumbar stenosis, and porphyria." Tr. at 18 (emphasis and citation omitted). At step three, the ALJ ascertained Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 19 (emphasis and citation omitted).

The ALJ determined Plaintiff has the following RFC:

> [Plaintiff can] perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). [Plaintiff] is able to occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds. He is able to stand, walk, and or sit for a total of six hours out of an eight hour work day. He must have the option to sit or stand every 60 minutes. He may occasionally climb stairs and balance. He must never climb ropes, ladders or scaffolds. He is not able to stoop, kneel, crouch or crawl. He may occasionally engage in handling, fingering, and feeling. He must avoid concentrated exposure to hazards such as machinery and heights.

Tr. at 20 (emphasis omitted). At step four, the ALJ found Plaintiff "is unable to perform any past relevant work." Tr. at 25 (emphasis and citations omitted). At step five, after "considering [Plaintiff's] age, education, work experience, and [RFC]," the ALJ found that

"there are jobs that exist in significant numbers in the national economy" Plaintiff can perform, such as "Surveillance System Monitor[.]" Tr. at 25-26 (emphasis and citation omitted). The ALJ concluded that Plaintiff "has not been under a disability . . . from November 15, 1997, through the date of th[e D]ecision." Tr. at 26 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial

evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

This case centers around the issue of whether the ALJ adequately accounted for the limitations associated with Plaintiff's porphyria in the hypothetical posed to the VE. At the hearing, the ALJ posed two hypothetical questions to the VE. According to the VE's testimony, the ALJ's first hypothetical would not have precluded a person from the ability to work, and the second hypothetical would have. Although it is unclear whether the ALJ meant for the second hypothetical to account for Plaintiff's porphyria limitations, it is clear that the ALJ ultimately found Plaintiff's porphyria to be controlled with medication and therefore did not include any effects of it in the first hypothetical to the VE or in the RFC in the written Decision. Because the undersigned cannot properly review the finding that the porphyria is controlled with medication, the Commissioner's decision is due to be reversed and remanded as further explained below.

### A. Parties' Positions

Plaintiff argues that the ALJ erred by failing to include Plaintiff's limitations related to porphyria in the RFC in the first hypothetical question posed to the VE, which RFC was adopted in its entirety in the ALJ's written Decision. Pl.'s Mem. at 4-6. Plaintiff claims that presumably the ALJ accounted for the limitations associated with his porphyria in the second hypothetical to the VE, when the VE was asked to assume that the person would stay "off task" two hours in addition to the normal breaks and lunch period. Id. at 6. Plaintiff claims that had this "off task" limitation associated with porphyria been included in the ultimate RFC

assessment, the VE's testimony would have precluded a finding that Plaintiff possesses the ability to work. Id.  Plaintiff admits, however, that it is unclear whether the "off task" restriction was in consideration of the effects of Plaintiff's porphyria or for a different impairment. Id.

The Commissioner counters that "[t]he ALJ's hypothetical question and RFC include all of the limitations that were supported by the record." Memorandum in Support of the Commissioner's Decision (Doc. No. 20; "Def.'s Mem."), filed October 5, 2011, at 9. With regard to Plaintiff's porphyria, the Commissioner argues that the ALJ considered Plaintiff's porphyria but found it to be "well-controlled by medication." Def.'s Mem. at 9. The Commissioner also points out several notations in the record documenting Plaintiff's "missed" medication treatments and argues "that Plaintiff's condition often worsened when he missed his . . . treatments." Id. at 6 (citations omitted). The Commissioner concludes, "[t]he VE's testimony thus provided substantial evidence to support the ALJ's conclusion." Id. at 11.

## B. Relevant Facts

Plaintiff testified that he has suffered from symptoms associated with porphyria since he was a child, but that it first began affecting his ability to sustain employment in 1997, the alleged onset date. Tr. at 43. These symptoms include severe abdominal pain, nausea, vomiting and diarrhea. Tr. 297-341. In March 2006, Dr. M. Akin Cabi suspected that Plaintiff may have porphyria, after a urinalysis showed abnormal levels of porphyrins. Tr. at 272. Subsequently, Plaintiff underwent extensive diagnostic testing including a colonoscopy, cold biopsy, hepatobiliary scan, ultrasound, and CAT scan of the pelvis. Tr. at 258-68. The test

results revealed some abnormal findings such as a small hiatal hernia and diverticulosis. Tr. at 258-59. From April 2006 to February 2008, Plaintiff was seen numerous times at the North Florida Hematology and Oncology Association for symptoms of abdominal pain, vomiting, nausea and diarrhea related to his possible porphyria. Tr. at 297-341. He was also admitted to the hospital with symptoms of possible porphyria in January 2007, July 2007, August 2007 (twice), December 2007, and January 2008, but treating doctors could not determine definitely whether he indeed suffered from porphyria. Tr. at 408, 397-407, 376-87, 388-95, 327, 324, 417-21, 434-38. At some unknown point, doctors became convinced that Plaintiff suffered from some form of porphyria.

On August 13, 2007, Plaintiff began treatment for porphyria with hematin, also known as panhematin,[4] to help control his symptoms. Tr. at 299. On January 28, 2008, Plaintiff underwent an upper GI endoscopy that revealed esophagitis and diverticulum. Tr. at 252. On February 11, 2008, Plaintiff was told by Dr. Suprith Badarinath that his insurance was denying coverage for his hematin treatments going back to October 2007 and would no longer provide coverage for hematin. Tr. at 320. One can infer from the February 11, 2008 treatment note that Plaintiff would need to go to the hospital for further treatment. See Tr. at 320 (stating that "[w]e discussed treating him in the hospital this week, or going one week without treatment. Tentatively, we will go one week without treatment"). There are a few instances documented in the record – after Plaintiff began treatment with hematin but before

---

[4] Panhematin is an enzyme inhibitor derived from processed red blood cells. Hemin for injection was known previously as hematin. The term hematin has been used to describe the chemical reaction product of hemin and sodium carbonate solution. Hemin is an iron containing metalloporphyrin. National Institute of Health, Panhematin, at http://dailymed.nlm.nih.gov/dailymed/archives/fdaDrugInfo.cfm?archiveid=19140 (last visited Aug. 30, 2012).

he was notified by Dr. Suprith Badarinath regarding the lack of insurance coverage – in which treatment notes indicate Plaintiff's symptoms may have been brought on by his failure to receive prescheduled hematin injections. See Tr. at 322, 330, 332. Each of these instances falls within the time frame of the retroactive denial of insurance coverage. See Tr. at 322, 330, 332.

After Plaintiff was notified his insurance company would not provide coverage for the panhematin treatments, Plaintiff was admitted to the hospital in February, March, and April 2008 for abdominal pain and vomiting. Tr. at 409, 411-16, 424-29, 460-61, 445, 443-44, 450-53. Some of the notes from the admissions state Plaintiff received hematin treatments and responded well. Tr. at 460-61, 409, 445, 443. Plaintiff's February 2008 hospitalization notes suggest that his failure to receive hematin treatments may have precipitated his symptoms. Tr. at 460-61, 412-13. Although Plaintiff's February 2008 hospitalization notes indicate that Plaintiff's symptoms may have been brought on by his failure to receive hematin injections, this hospitalization was just ten (10) days after he was informed that his insurance would no longer cover hematin. Tr. at 320, 460-61. Additional CT scans of Plaintiff's pelvis performed on March 13, 2008 revealed sigmoid diverticulosis and a small amount of fluid in the pelvis. Tr. at 458.[5]

---

[5] Additional evidence relating to Plaintiff's porphyria was submitted to the Appeals Council ("AC"); however, the undersigned is not reviewing the additional evidence for the following reasons. If a plaintiff alleges only that an ALJ's decision was not supported by substantial evidence, a reviewing court "will <u>look only to the evidence actually presented to the ALJ</u> in determining whether the ALJ's decision is supported by substantial evidence." Falge, 150 F.3d at 1323 (emphasis added); see also Ingram, 496 F.3d at 1266 (recognizing "Falge to hold that when a claimant challenges the [ALJ]'s decision to deny benefits, but not the decision of the [AC] to deny review of the [ALJ], we need not consider evidence submitted to the [AC]"); Eads v. Sec. of Dep't of Health & Human Servs., 983 F.2d 815, 817 (7th Cir. 1983) (Posner, J.) (stating that an ALJ "cannot be faulted for having failed to weigh evidence never presented to him"). Thus, if a plaintiff's appeal centers only on an ALJ's decision to deny benefits and not on whether the AC erred in its denial of review, a reviewing court only
(continued...)

At the hearing and in an Adult Function Report, Plaintiff stated that he has no money and relies on the support of his family. Tr. at 170-71, 50. Plaintiff's earnings records also indicate that he has had no earnings since 1998. Tr. at 146.

**C. Applicable Law**

In determining an individual's RFC, an ALJ "must consider limitations and restrictions imposed by all of an individual's impairments . . . ." SSR 96-8P, 1996 WL 374184 at *5; see also 20 C.F.R. § 404.1545(a)(2); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)); Hudson v. Heckler, 755 F.2d 781, 785 (11th Cir. 1985) (stating that "[w]here a claimant has alleged a multitude of impairments, a claim . . . may lie even though none of the impairments, considered individually, is disabling") (internal quotation and citation omitted).

In the fifth step of the sequential evaluation process, an ALJ may pose a hypothetical question to a VE as part of his determination of whether the claimant can obtain work in the national economy. See 20 C.F.R. § 416.920(a)-(f). When the ALJ relies on the testimony of a VE, "the key inquiry shifts from the RFC assessment in the ALJ's written decision to the adequacy of the RFC description contained in the hypothetical posed to the VE." Corbitt v. Astrue, No. 3:07-cv-518-J-HTS, 2008 WL 1776574, at *3 (M.D. Fla. Apr. 17, 2008) (unpublished). In determining an individual's RFC and later posing a hypothetical to a VE which includes the RFC, the ALJ "must consider limitations and restrictions imposed by all

---

[5](...continued)
considers the evidence "actually presented" to the ALJ. Falge, 150 F.3d at 1323-24. Here, because Plaintiff only challenges the ALJ's Decision, this Court is precluded from considering the additional evidence, Tr. at 562-674, submitted for the first time to the AC.

of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also 20 C.F.R. § 404.1545(a)(2); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)); Hudson v. Heckler, 755 F.2d 781, 785 (11th Cir. 1985) (stating that, "[w]here a claimant has alleged a multitude of impairments, a claim . . . may lie even though none of the impairments, considered individually, is disabling") (internal quotation and citations omitted). "In order for a [VE]'s testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson, 284 F.3d at 1227 (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999)); see also Loveless v. Massanari, 136 F. Supp. 2d 1245, 1250 (M.D. Ala. 2001).

**D. Analysis**

The ALJ accepted Plaintiff's porphyria as a "severe" impairment, Tr. at 18, but elected not to include any of the limitations resulting therefrom in the first hypothetical to the VE and the RFC in the written Decision. In essence, the ALJ's decision not to credit any limitations associated with Plaintiff's porphyria in the first hypothetical and the RFC assessment was based on his finding that Plaintiff's condition is "under control with medication." Tr. at 24. There are two significant problems with this finding.

First, the finding does not appear to be supported by the record, and the ALJ did not provide any explanation of the finding for the Court to conclude otherwise. A review of the evidence shows Plaintiff was hospitalized at least nine (9) times in one and one-half (1.5) years for symptoms related to porphyria. Although the ALJ recognized some of these

-11-

hospitalizations in summarizing the medical evidence, Tr. at 22-24, he did not at all explain how he arrived at the conclusion that the porphyria is under control with medication, Tr. at 24. Given the significant number of hospitalizations and issues resulting from the porphyria, the finding does not, in the undersigned's view, appear to be supported by substantial evidence. Although Plaintiff sometimes improved <u>after</u> receiving the medication, he had significant and sometimes chronic symptoms <u>prior to</u> receiving it. The extensive amount of evidence in the record documenting Plaintiff's symptoms of porphyria does not appear to support the ALJ's conclusory finding that it is "under control with medication." Without any explanation of that finding, judicial review is frustrated.

Second, although the ALJ noted some noncompliance with hematin treatments when discussing the medical evidence, Tr. at 22-23, it is not clear whether the ALJ <u>relied upon</u> the alleged noncompliance as a basis for finding Plaintiff not disabled. Thus, on remand, the ALJ shall clarify whether noncompliance is a factor in the decision. If it is, the ALJ must take into account Plaintiff's lack of insurance coverage for the hematin treatments (which he did not do in the Decision) and whether the lack of coverage excuses any noncompliance. See <u>Dawkins v. Bowen</u>, 848 F.2d 1211, 1213-14 (11th Cir. 1988) (stating when an ALJ's finding that a claimant is not disabled is "inextricably tied to [a] finding of noncompliance," an ALJ is required to determine whether the claimant can afford prescribed treatment); see also <u>Ellison v. Barnhart</u>, 355 F.3d 1272, 1275 (11th Cir. 2003); <u>Lovelace v. Bowen</u>, 812 F. 2d 55, 59 (5th Cir. 1987) ("To a poor person, a medicine that he cannot afford to buy does not exist"); <u>Lovejoy v. Heckler</u>, 790 F. 2d 1114, 1117 (4th Cir. 1986) (failure to follow prescribed treatment does not preclude reaching the conclusion that a claimant is disabled when the

failure is justified by lack of funds); Dover v. Bowen, 784 F. 2d 335, 337 (8th Cir. 1986) ("the ALJ must consider a claimant's allegation that he has not sought treatment or used medications because of lack of finances").

## V. Conclusion

The Court is unable to determine whether substantial evidence supports the ALJ's finding that Plaintiff's porphyria is controlled with medication. Moreover, the Court is unable to review the RFC and first hypothetical to determine whether they were properly formulated until it is first determined whether substantial evidence supports the ALJ's finding that Plaintiff's porphyria is controlled by medication. After due consideration, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and pursuant to 42 U.S.C. § 1383(c)(3) **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

    (a) Reconsider the medical evidence relating to Plaintiff's porphyria and whether it is controlled with medication;

    (b) If appropriate, reassess the limitations put forth in the RFC and hypothetical question to the VE;

    (c) If appropriate, ensure that Plaintiff's other argument raised in this appeal is considered; and

    (d) Take such other action as may be necessary to resolve this claim properly.

2. The Clerk of Court is further directed to close the file.

      3.      If benefits are awarded on remand, Plaintiff's counsel shall have thirty (30) days from receiving notice of the amount of past due benefits to seek the Court's approval of attorney's fees pursuant to 42 U.S.C. § 406(b).  See Bergen v. Comm'r of Soc. Sec., 454 F.3d 1273 (11th Cir. 2006).

      **DONE AND ORDERED** at Jacksonville, Florida on August 31, 2012.

*[signature]*
JAMES R. KLINDT
United States Magistrate Judge

ijc
Copies to:
Counsel of record